UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WILLIAM FRANCES VANDEHEY, an Oregon sole proprietorship, | |
| Plaintiff, | Case No. 3:21-cv-00119-YY |
| v. | ORDER |
| MUNGER BROS., LLC, and MUNGER FARMS, LLC, both California limited liability companies, | |
| Defendants. | |

Plaintiff alleges that defendants caused herbicide damage to his blueberry crops in May of 2020 by spraying glyphosate in high winds on defendants' property bordering plaintiff's farm. Mot. Partial Summ. J. 2, ECF 42; Resp. 3, ECF 46. Plaintiff asserts two claims, timber trespass under O.R.S. 105.815 and negligence, and seeks approximately $2.4 million in damages roughly grouped into the following categories:

- Lost productivity from the blueberry bushes and lost profits for the blueberry crops from 2020 through 2027;

- Financial loss from selling farming equipment at less than market value to cover farm expenses in light of the crop damage; and

- Loss of equity in the property.

*See* First Am. Compl. ¶¶ 21–30, ECF 37.

1 – ORDER

Defendants have filed a motion for partial summary judgment in which they argue that plaintiff's claimed "lost equity" damages are not recoverable as a matter of law. Mot. Partial Summ. J. 3, ECF 42. Plaintiff asserts that the loss of equity in his farm was a foreseeable result of defendants' alleged negligence in spraying the herbicide that damaged his blueberry crop. Resp. 4–5, ECF 46. Plaintiff bought the land from the Connie S. Vandehey Trust for $1.1 million in a seller-financed transaction whereby plaintiff agreed to provide $81,000 as a down payment and make yearly payments of about $77,000 dollars for 19 years until the full amount was paid. Parker Decl., Ex. B ("Land Sale Contract") at 2, ECF 43-2. The Land Sale Contract's default term provided that if plaintiff failed to make timely payments, the seller could "cancel the Contract for default, . . . declare Buyer's rights under the Contract to be forfeited, extinguish the debt and retain all sums previously paid under this Contract by Buyer." *Id.* at 4. According to plaintiff, the crop damage and subsequent lost income caused him to default on the Land Sale Contract and lose his ownership interest in the farm and all the equity from the down payment, the periodic loan payments, and the farm's increase in value since he purchased it in 2013, and he now seeks to recover that lost equity from defendants. Resp. 2–3, ECF 46.

At a pretrial conference in June of 2022 (the pending trial was subsequently set-over), the court ruled on the record that plaintiff's loss of equity damages were not recoverable. ECF 59. This Order expands on that ruling. Under Oregon law, damages arising from injury to growing crops is generally measured by "the reasonable value of the crop which was destroyed, less expenses waived, plus the injury to the freehold if any." *Wood v. Woodcock*, 276 Or. 49, 60 (1976) (citing *Widner Electric v. Lee*, 272 Or. 445 (1975)). The value of the growing crop is determined by "taking the value at maturity which the crop would have had but for the injury and deducting the value which the injured crop actually had at maturity and deducting, further, any

2 – ORDER

reduction in amount and value of labor and expense attributable to the reduced yield." *Cross v. Harris*, 230 Or. 398, 406 (1962). The court has already ruled that those types of damages are, as a general matter, recoverable.[1]

Relatedly, the damages to the land caused by tortious interference, including for example timber trespass, is ordinarily "the difference between the market value of the owner's property before the trespass and its value after the trespass." *Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 201 Or. App. 568, 582 (2005) (citing *United States v. Firchau,* 234 Or. 241, 248 (1963)) (additional citation omitted). Evidence of a property's value after a tortious injury can be established several ways, including through the property owner's opinion as to the fair market value of the property and the diminution of that value caused by the defendant's injury to it. *Lunda v. Matthews*, 46 Or. App. 701, 710 (1980) (explaining that an "owner of property is competent to give an opinion regarding its fair market value and diminution in value"). Damages may also be shown by comparing the damaged parcel's value with comparably similar but unaffected parcels. *Cross*, 230 Or. at 407 (evidence regarding crop yield from sprayed field and crop yield from similar but unsprayed crop field offered "a fair standard of comparison for the assessment of damages"). The "lost equity" damages that plaintiff seeks here are not based on the market value of the property, but rather on his lost investment of the property as dictated by the Land Sale Contract. And plaintiff has not provided any authority, nor has the court found, despite extensive searching, any case from Oregon or any other jurisdiction that stands for the proposition that the fair market value of the property should be dictated by the terms of the financing agreement plaintiff entered into with a third party to acquire it.

---

[1] The specific nuances of those damages are not addressed here, and this order does not modify any of the court's past rulings on damages other than the loss of equity.

3 – ORDER

The general rule in civil actions, including those asserting negligence claims, is that "damages are only recoverable if they are reasonably foreseeable." *State v. Ramos*, 358 Or. 581, 596 (2016) (citing *Joseph Forest Products v. Pratt*, 278 Or. 477 (1977) (additional citations omitted). Damages that are "so attenuated that they cannot reasonably be understood to result from a defendant's conduct" are not recoverable. *Id.* (internal quotation marks omitted). Damages are "too attenuated to be recoverable" if a "reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *Id.*; *see also O'Kain v. Landress*, 299 Or. App. 417, 425 (2019) ("Plaintiffs are entitled to prevail . . . if the record on summary judgment presents a genuine issue of material fact as to whether any of the LLC Plaintiffs' losses were a reasonably foreseeable consequence of defendants' conduct.").

The lost equity damages here are similar to breach of contract damages based on a collateral contract, in that the damages were incurred not as direct result of defendant's spraying, but as the result of plaintiff breaching an agreement with a third party. And the analysis of breach of contract damages based on a "collateral contract" or similar concept is useful here because it too is guided by what the parties reasonably anticipated or foresaw might happen if something went wrong. In a breach of contract action, a party can recover "[a]ny damages . . . that may reasonably be supposed to have been within the contemplation of the parties at the time the contract was executed, and which were the approximate and natural consequences of the breach[.]" *Senior Ests., Inc. v. Bauman Homes, Inc.*, 272 Or. 577, 586 (1975) (quoting *Gordon v. Curtis Bros.*, 119 Or. 55, 66–67 (1926)). The plaintiff in *Bauman Homes* "was engaged in the development of a retirement community" and entered into a "contract for the sale and development of 231 building lots" with the defendant whereby the defendant would "sell the lots

and build homes" on them for individual homebuyers. *Id.* 580. The development was a bust; the defendant "built only 17 house and sold only three." *Id.* at 581. The defendant attempted to rescind the original contract based on the plaintiff's alleged misrepresentations, and the plaintiff contracted with a different construction company to finish the project. *Id.* The plaintiff then sued the defendant, seeking to recover the difference between the original contract price and the proceeds from the eventual sales, along with "actual costs" incurred in the process. *Id.* at 582. One of the costs the plaintiff claimed was "excess interest" that the plaintiff incurred as a result of a financing agreement with U.S. National Bank. *Id.* The plaintiff's theory was that the repayment of the notes under the financing agreement was "directly related to the anticipated rate of payments expected to be received from defendant under the contract schedule." *Id.* at 588. Thus, when the plaintiff could not make the payments as expected with proceeds from defendant's (nonexistent) sales, the plaintiff paid more in interest to the bank than it should have. *Id.*

Notably, the Oregon Supreme Court declined to determine whether the financing agreement was "collateral" to or "directly related" to the original contract and instead asked whether the plaintiff had established "that the loss sustained on these notes was reasonably within the contemplation of both parties at the time of the making of the contract." *Id.* at 588 (internal quotation marks omitted). The court then determined there was no evidence that the defendant had notice about the financing agreement, the terms of repayment, or that the plaintiff's repayment plan was tied to the defendants' performance under the original contract, and thus plaintiff could not recover the claimed excess interest. *Id.* at 590.

5 – ORDER

Similarly here, there is no evidence that defendant knew or had reason to know about plaintiff's financing arrangements for the farm, or that the Land Sale Contract had a strict forfeiture clause that would cause plaintiff to lose his investment in the property if he defaulted. While plaintiff's claims here sound in negligence, not in contract, the damages analysis for both types of claims are guided by the same principle: only those damages which are "reasonably foreseeable" or "reasonably anticipated" are recoverable. And though this case is different in some ways than those in which damages caused by "the intervening action or market forces" were not recoverable in tort, *see Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 345 (2004), it is similar in that the "lost equity" damages claimed here are attenuated from the direct consequences of defendant's allegedly negligence herbicide spraying. *See Ramos*, 358 Or. at 596. Finally, Plaintiffs has not provided and the court has not found any authority supporting plaintiff's theory of "lost equity" damages based on breach of a third-party financing agreement.

For all the reasons stated in this Order, defendant's motion for partial summary judgment (ECF 42) on plaintiff's claim for damages related to his loss of equity in his property is granted.

IT IS SO ORDERED.

DATED February 3, 2023.

        /s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

6 – ORDER